**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| M.P., by and through legal guardians, | : | Case No. 1:19-cv-01056 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| Monroe Local Schools, et al., | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss filed by Defendants Monroe Local School District Board of Education ("School Board"),[1] Nancy Stratton, and Melissa Giffen[2] (Doc. 20) and the Motion for Judgment on the Pleadings filed by the City of Monroe, Ohio Police Department and Bradley Jackson (Doc. 24). Plaintiff M.P. filed Responses in Opposition (Docs. 27, 29) and Defendants filed Replies (Doc. 28, 30).

**I.    BACKGROUND**

Plaintiff was 11-years-old on December 6, 2018, and his parents bring this action on his behalf. (Doc. 1 ¶ 8); *see* FED. R. CIV. P. 17(c)(2). Plaintiff attended Monroe Elementary School during the 2018-2019 school year, and was present at school on December 6, 2018. (Doc. 1 ¶ 16). Monroe Elementary School is within the district of

---

[1] Defendant School Board explains that the Complaint incorrectly names "Defendant Monroe Local Schools" as a defendant, and that it will proceed under the assumption "that Plaintiff[] meant to sue the Monroe Local School District Board of Education to avoid Plaintiff[] having to amend." (Doc. 20 PageID 57-58).

[2] Defendant Giffen explains that the Complaint incorrectly spells her last name as Giffin. (Doc. 20 PageID 54).

Defendant School Board. (*Id.* ¶¶ 9, 16). Defendants Stratton and Giffen were the principal and vice principal, respectively, of Monroe Elementary School on December 6, 2018. (*Id.* ¶¶ 10, 17). Defendant Jackson was a school resource officer for Defendant School Board, a police officer for Defendant City of Monroe, Ohio Police Department, and at Monroe Elementary School on December 6, 2018. (*Id.* ¶¶ 14, 19).

Plaintiff has attention-deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD") which are both neurodevelopmental disorders characterized by, among other things, impaired social interaction and communication, and restrictive and repetitive behaviors. (*Id.* ¶ 8). Plaintiff qualifies for special education and related services under the Individuals with Disabilities Education Act ("IDEA"). (*Id.*)

On December 6, 2018, Plaintiff and another child volunteered to stay in a classroom, instead of going outside to recess, with a third child who had recently undergone significant surgery and was prohibited from going to outside recess due to that surgery. (*Id.* ¶ 20). Upon noticing Plaintiff and other two children inside the classroom, possibly unsupervised, an unidentified para-professional of Monroe Elementary School ordered the three students to go to outside recess. (*Id.* ¶ 21). The three children told the para-professional that they had received permission to remain inside, and attempted to explain why, but the para-professional ordered them to go outside a second time. (*Id.*)

The child who recently underwent surgery complied with the para-professional's second order and went outside in tears. (*Id.* ¶ 22). Plaintiff did not comply. (*Id.* ¶ 23).[3] Instead, Plaintiff requested to go to "the quiet room," one of his accommodations under his 504 Plan provided to him by the school pursuant to Section 504 of the Rehabilitation

---

[3] It is not clear what the third child did or where that child went.

Act of 1973 ("Section 504"). (*Id.* ¶¶ 23, 25). The para-professional denied Plaintiff's requested accommodation and summoned Defendant Stratton to the classroom. (*Id.* ¶ 23). When Defendant Stratton arrived, Plaintiff requested to go to the quiet room. (*Id.* ¶ 24). Defendant Stratton denied Plaintiff's requested accommodation and summoned Defendant Giffen to the classroom. (*Id.*) Defendant Giffen arrived and denied Plaintiff's requested accommodation to go to the quiet room. (*Id.* ¶ 25). Defendant Giffen ordered Plaintiff to go to outside recess and threatened to summons Defendant Jackson. (*Id.* ¶ 26). Plaintiff remained inside. (*Id.*)

At this time, Defendant Jackson yelled Plaintiff's name from down the hallway. (*Id.* ¶ 28). Plaintiff remained inside. (*Id.* ¶ 27). Defendant Jackson subsequently walked to the classroom, where Plaintiff, Defendant Stratton, Defendant Giffen, and the para-professional were, and ordered Plaintiff to go outside. (*Id.* ¶ 29).[4] Plaintiff then went outside. (*Id.* ¶ 30).

Defendant Jackson followed Plaintiff as Plaintiff exited the building. (*Id.* ¶ 31). Once outside, Defendant Jackson immediately threw his drink on the ground and, without warning, grabbed Plaintiff from behind in an aggressive manner. (*Id.*) Defendant Jackson proceeded to scream at, manhandle, and handcuff Plaintiff. (*Id.* ¶ 32). Plaintiff was shocked. (*Id.* ¶ 33).[5] Defendant Jackson then threated to send Plaintiff to "juvie" over the

---

[4] The Court acknowledges that, in his Answer, Defenant Jackson alleges that, when he entered the classroom, he found "Plaintiff exhibiting unusual-for-Plaintiff verbal and physical behaviors, including refusing to follow school rules and instructions of the staff, and a glassy-eyed stare and a challenging posture." (Doc. 23 ¶ 29). However, at this juncture, all well-pleaded material allegations of the pleadings of the party opposing the motion for judgment on the pleadings must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

[5] The Court acknowledges that, in his Answer, Defendant Jackson alleges "that, while walking outside, Plaintiff made statements to [Defendant] Jackson, challenged his authority, and turned around abruptly so that Plaintiff's face was within inches of Jackson's face" and "Jackson believed (1) Plaintiff might swing on

Christmas holiday and marched Plaintiff out of the other students', who were at outdoor recess, sight. (*Id.* ¶ 34).

Defendant Stratton, Giffen, and Jackson, who was physically leading Plaintiff, then marched Plaintiff through the school's hallways, past other teachers and volunteer parents, to the school's office. (*Id.* ¶ 35). During their travel to the office, Defendant Jackson threaten to send Plaintiff to "juvie" over the Christmas holiday again and, more than once, physically lifted up Plaintiff's handcuffed hands behind Plaintiff's back which caused Plaintiff pain. (*Id.* ¶¶ 36-37). Plaintiff said nothing during the travel to the office. (*Id.* ¶ 37).

The school's video surveillance system memorialized above. (*Id.* ¶ 38).

Upon their arrival at the office, Defendant Jackson left Plaintiff sitting in his handcuffs while Defendant Jackson spoke with Defendant Giffen. (*Id.* ¶ 39). After Defendant Jackson and Defendant Giffen spoke with each other, they returned to Plaintiff and told Plaintiff that he was a bad kid, told Plaintiff that he had always been a bad kid, and asked Plaintiff what Plaintiff thought he would do now. (*Id.* ¶ 38 PageID 9).[6] After Plaintiff sat in the office for 15 or 20 minutes, someone called his parents, and someone removed Plaintiff's handcuffs while his mother drove to the school. (*Id.* ¶ 39 PageID 9). Upon her arrival to the school's office, Plaintiff's mother found Plaintiff in a frozen, catatonic state. (*Id.* ¶ 40).

---

him and (2) the best way to de-escalate the situation and prevent a physical altercation from taking place was to temporarily handcuff Plaintiff." (Doc. 23 ¶¶ 31-32). *But see JPMorgan Chase Bank, N.A.*, 510 F.3d at 581.

[6] The Complaint includes two paragraphs 38 and 39. (Doc. 1 ¶¶ 38-39 PageID 8-9).

Plaintiff's mother spoke to Defendant Jackson and Defendant Giffen. (*Id.*) Defendant Jackson told Plaintiff's mother that Plaintiff refused to comply with Defendant Jackson's instructions to go outside and Defendant Jackson feared that Plaintiff would strike Defendant Jackson. (*Id.* ¶ 41). Defendant Jackson also told Plaintiff's mother that he had handcuffed three other children Plaintiff's age in his career as a school resource officer and police officer. (*Id.*) Plaintiff's mother requested to view the school's video surveillance system and was denied access to the video while she was at the school on December 6, 2018. (*Id.* ¶ 43). A subsequent review of the video revealed that Defendant Jackson's statements to Plaintiff's mother were false. (*Id.* ¶ 44).

Plaintiff has experienced extreme emotional distress, humiliation, and anxiety, was afraid to return to school, and missed a number of days of school as a result of the events at school on December 6, 2018. (*Id.* ¶¶ 46-47). Plaintiff also has been diagnosed with post-traumatic stress disorder ("PTSD") and requires regular treatment with a cognitive-based behavioral therapist as treatment for his PTSD as a result of the events. (*Id.* ¶ 48).

Plaintiff's Complaint includes 12 causes of action[7] against the various Defendants: violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; a violation of Section 504; a violation of the Americans with Disabilities Act ("ADA"); assault; battery; negligent supervision and training; negligence; intentional infliction of emotional

---

[7] Although the Complaint lists 15 claims, it skips counts six and 14 and also improperly includes a request for punitive damages as a separate claim. (Doc. 1); (Doc. 1-1); *see Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (explaining that "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action.").

distress; negligent infliction of emotional distress; and respondeat superior.[8] (Doc. 1; (Doc. 1-1).[9]

## II. <u>ANALYSIS</u>

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial—[.]" The standard of review for a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

In deciding a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To withstand a Rule 12(b)(6) motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[8] Plaintiff concedes that his respondeat superior claim against Defendant School Board should not proceed. (Doc. 27 PageID 134).

[9] The second document that contains the Complaint starts its numbered paragraphs at 54 despite the fact that the first document that contains the Complaint ends at numbered paragraph 106. *Compare* (Doc. 1 PageID 20, *with* (Doc. 1-1 PageID 21). In an attempt to avoid additional confusion, the Court will refer to PageID numbers, instead of paragraph numbers, when citing the second document that contains the Complaint.

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### a. Defendant City of Monroe, Ohio Police Department

Defendant City of Monroe, Ohio Police Department argues that judgment on the pleadings is appropriate regarding all of Plaintiff's claims against it, as it is not sui juris, *i.e.*, is not its own entity and is not capable of being sued. (Doc. 24 PageID 105). Plaintiff concedes that Defendant City of Monroe, Ohio Police Department is not sui juris. (Doc. 29 PageID 146-147). Plaintiff states that he will move to amend his Complaint to include the proper defendant as City of Monroe, Ohio. (*Id.*) However, over one year later, Plaintiff has yet to move to amend. In light of Plaintiff's concession and inaction, and to advance the case, the Court will dismiss all of the claims against Defendant City of Monroe, Ohio Police Department.

### b. 42 U.S.C. § 1983

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a viable claim under Section 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and the deprivation was caused by a person acting under color of law. *See Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012)).

### i. Right Against Unlawful Seizure and to Due Process[10]

Plaintiff alleges that Defendant Jackson violated Plaintiff's constitutional right against unlawful seizure and to due process when Defendant Jackson seized Plaintiff and did so without parental notification or consent. (Doc. 1 ¶¶ 49-53, 54-64).

### 1. Official capacity

With respect to Plaintiff's claims against Defendant Jackson in his official capacity, *i.e.*, against the City of Monroe, "local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (internal citations and quotation marks omitted); *see Galloway v. Chesapeake Union Exempted Vill. Sch. Bd. of Educ.*, No. 1:11-CV-850, 2012 WL 5268946, at *7 (S.D. Ohio Oct. 23, 2012) ("Since an official capacity claim against an individual equates to a claim against the entity or office employing the official, a suit against a governmental official in his or her official capacity therefore should be treated as a suit against the governmental entity" (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))). "Instead, a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Municipal liability based on the actions of an employee or agent is also known as *Monell* liability.

---

[10] As the parties address these claims in tandem, the Court will too. Also, Plaintiff concedes that these claims should not proceed against Defendants School Board, Stratton, and Giffen. (Doc. 27 PageID 125).

To adequately plead *Monell* liability, a plaintiff must allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *accord Brooks v. Spiegel*, No. 20-6437, 2021 WL 4026728, at *1 (6th Cir. Sept. 3, 2021).

Defendant Jackson argues that the Complaint does not sufficiently plead *Monell* liability. (Doc. 24 PageID 107); (Doc. 30 PageID 167-68). Plaintiff responds that he "intend[s] to produce evidence that those with final decision making authority approved of [Defendant Jackson's] actions." (Doc. 29 PageID 149). However, the Complaint does not allege that a City of Monroe official with final decision-making authority ratified Defendant Jackson's actions. (Doc. 1); (Doc. 1-1). The Complaint also does not identify a City of Monroe policy or custom or allege that a City of Monroe policy or custom caused any of the alleged constitutional violations to occur. (Doc. 1); (Doc. 1-1). Plaintiff fails to allege plausible *Monell* claims against Defendant Jackson in his official capacity. Dismissal of these claims against Defendant Jackson is appropriate.

## 2. Individual capacity

Turning to Plaintiff's claims against Defendant Jackson in his individual capacity, Defendant Jackson argues that the he is entitled to qualified immunity. (Doc. 24 PageID 108-10); (Doc. 30 PageID 168-72).

"An official sued under §1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014)

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *accord Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The Sixth Circuit has explained:

> To determine whether a government official is entitled to qualified immunity, we consider the two-part test described in *Saucier v. Katz*, which asks whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." 533 U.S. 194, 200-01 . . . (2001). We are free to address the second question first, analyzing whether the constitutional right that purportedly prohibited a defendant's conduct was clearly established, without addressing whether there was a constitutional violation at all. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014) (footnote omitted). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778-79. However, there need not be a prior case directly on point for a law to be clearly established; generalized statements of the law or a general constitutional rule already identified in the decisional law are sufficient. *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010). Although qualified immunity typically is addressed at the summary judgment stage, the defense may be raised and considered on a motion to dismiss. *Hardy v. Jefferson Cmty. College*, 260 F.3d 671, 677 (6th Cir. 2001).

For purposes of his Motion for Judgment on the Pleadings, Defendant Jackson argues that, even assuming that Plaintiff sufficiently alleges that a seizure occurred on December 6, 2018, in the school setting, a student's right to be free from temporary

handcuffing and right to have his or her parents notified before such handcuffing are not clearly established, and no reasonable officer in his position would have believed that temporarily restraining Plaintiff, or doing so before notifying Plaintiff's parents, were clear violations of Plaintiff's constitutional rights. (Doc. 24 PageID 108-10); (Doc. 30 PageID 170-72).

Construed in the light most favorable to Plaintiff, as the Court must at this juncture, the allegations in the Complaint implicate a right to be free from unlawful seizures in the school setting. On December 6, 2018, it was well-established that the Fourth Amendment applied, although in a relaxed manner, to school officials in the school setting. *N.J. v. T.L.O.*, 469 U.S. 325, 342 (1985) (A seizure is "permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[] . . . in light of the age and sex of the student and the nature of the infraction."); *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (applying Fourth Amendment to a claim of a school official's unlawful detainment of a student, and stating that a "school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule") (internal quotation marks omitted). "[E]ven as to action less than an outrage, "officials can still be on notice that their conduct violates established law . . . in novel factual circumstances." *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 377-378 (2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Court finds that a reasonable police officer serving as school resource officer for an elementary school, at a minimum, knew or should have known that handcuffing, in the manner and duration alleged, a child who is complying with an order to go to outside would be unconstitutional. *See United States v. Lanier*, 520 U.S. 259, 271 (1997); *T. L.O.*,

469 U.S. at 342. The grant of qualified immunity is not appropriate as to Plaintiff's Fourth Amendment claim against Defendant Jackson in his individual capacity at this stage in the proceedings.

Plaintiff does not respond to Defendant Jackson's assertion that it is clearly established that a school's temporary detention of a minor student does not require prior notification to the student's parents. (Doc. 24 PageID 109); (Doc. 30 PageID 172-73); *see, e.g.*, *Wofford v. Evans*, 390 F.3d 318, 325 (4th Cir. 2004) ("The Constitution does not impose a duty of parental notification before the pupil's disciplinary detainment while such school guardianship persists."). The Court treats Plaintiff's silence as a concession, and will dismiss Plaintiff's due process claim brought against Defendant Jackson in his individual capacity.

### ii. Right to Equal Protection

Plaintiff brings a Section 1983 claim based on disability discrimination under the Equal Protection Clause of the Fourteenth Amendment against Defendants Stratton, Giffen, and Jackson. (Doc. 1 ¶¶ 65-71).[11]

"The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *J.B.F. v. Kentucky Dep't of Educ.*, No. 5:15-CV-33-REW, 2016 WL 3167546, at *9 (E.D. Ky. June 3, 2016), *aff'd sub nom. J.B.F. by & through Stivers v. Kentucky Dep't of Educ.*, 690 F. App'x 906 (6th Cir. 2017) (quoting *Foster v. Michigan*, 573 F. App'x 377, 396 (6th Cir. 2014)). The clause "commands that no state shall deny to any person within its jurisdiction the equal protection of the laws." *Id.* (quoting *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 256 (6th Cir. 2015) (en banc)). "To

---

[11] Plaintiff concedes that this claim should not proceed against Defendant School Board. (Doc. 27 PageID 125).

state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment burdens a fundamental right, targets a suspect class, or has no rational basis." *Id.* (quoting *Bible Believers*, 805 F.3d at 256); *see Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010).

The Equal Protection Clause does not prohibit classifications; rather, it prohibits differential treatment of persons who are in all relevant respects alike. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Because people with disabilities are not considered a protected or suspect class for purposes of an equal protection challenge, a state may treat disabled students differently, so long as its actions are rationally related to some legitimate governmental purpose. *Id.*

## 1. Defendants Stratton and Giffen

Defendants Stratton and Giffen argue that the Complaint does not include specific allegations against them. (Doc. 20 PageID 61); (Doc. 28 PageID 137-38). Plaintiff responds that the Complaint contains "sufficient facts to plausibly infer that Defendants Giffen and Stratton treated him differently than other children entitled to reasonable accommodations by repeatedly denying [him] the accommodation and instead . . . choosing to involve law enforcement." (Doc. 27 PageID 126). The Complaint, though, does not allege that Defendants Stratton and Giffen repeatedly denied Plaintiff's requested accommodation or involved Defendant Jackson. The Complaint alleges that Defendants Stratton and Giffen each denied Plaintiff's requested accommodation once on December 6, 2018, and Defendant Giffen warned that she would contact Defendant Jackson but, instead, Defendant Jackson appeared from down the hallway and

approached the group on his own. (Doc. 1 ¶¶ 24-28). Further, the Complaint does not allege, and the Court cannot infer, that Defendants Stratton and Giffen treated Plaintiff differently as compare to similarly situated students, and the Court need not accept as true Plaintiff's legal conclusions that Defendants Stratton and Giffen did so. *See Twombly*, 550 U.S. at 555 (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation") (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Dismissal of this claim against Defendants Stratton and Giffen, in their official and individual capacities, is warranted.

### 2. Defendant Jackson

Defendant Jackson argues that the Complaint contains no factual allegations to support its legal conclusion that Defendant Jackson discriminated against Plaintiff because of Plaintiff's status as a child with a disability. (Doc. 24 PageID 110-12); (Doc. 30 PageID 173-75).

For reasons similar to those provided in Section II(b)(i)(1) of this Opinion and Order, Plaintiff fails to allege a plausible *Monell* claim against Defendant Jackson in his official capacity with respect to Plaintiff's equal protection clause claim. Dismissal of this claim is appropriate.

The Complaint alleges that "Defendants discriminated against [Plaintiff], in whole or in part, because of his status as a child with a disability," Plaintiff "was physically restrained based, in whole or part, on his disabilities or manifestations of his disabilities," and "[s]tudents without disabilities were not subjected to the abuses [he] was subjected to, as described [in the Complaint]." (Doc. 1 ¶¶ 67-69). The Court finds that the Complaint contains adequate factual allegations, or factual content that allows the Court to draw the

reasonable inference, that Defendant Jackson treated Plaintiff differently than similarly situated non-disabled minor students and Defendant Jackson's actions towards Plaintiff on December 6, 2018 were not rationally related to some legitimate governmental purpose. At this juncture, Plaintiff's equal protection clause claim against Defendant Jackson in his individual capacity survives.

### c. Section 504 of the Rehabilitation Act of 1973 and ADA[12]

Plaintiff alleges that Defendant School Board and Defendant Jackson, in his official capacity, violated Section 504 and the ADA. (Doc. 1 ¶¶ 72-80, 81-87).[13]

As a general matter, Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA similarly provides that, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Section 504 and the ADA "combat discrimination against disabled individuals . . . [and] allow[ ] disabled individuals to sue certain entities, like school districts, that exclude

---

[12] As the parties address these claims in tandem, the Court will too. Additionally, the Court notes that no Defendant argues that Plaintiff's claims under Section 504 or the ADA should be dismissed for failure to exhaust administrative remedies under the IDEA. *See, e.g.*, *Alexander v. Lawrence Cty. Bd. of Developmental Disabilities*, No. 1:10-CV-697, 2012 WL 831769, at *10 (S.D. Ohio Mar. 12, 2012). *But see Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755 (2017) (holding that exhausting administrative remedies under the IDEA is required only when the substance and gravamen of a plaintiff's complaint seeks redress for a school's failure to provide a "Free Appropriate Public Education").

[13] Plaintiff concedes that these claims should not proceed against Defendants Stratton, Giffen, and Jackson in his individual capacity. (Doc. 27 PageID 126); (Doc. 29 PageID 155).

them from participation in, deny them benefits of, or discriminate against them in a program because of their disability." *Doe v. Sumner Cty. Bd. of Educ.*, No. 3:19-CV-01172, 2020 WL 5797980, at *2 (M.D. Tenn. Sept. 29, 2020) (quoting *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016) (alterations in original)). "Given the similarities in the two statutory provisions," courts in this Circuit have long merged their analyses under both. *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021) (quoting *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 836 (6th Cir. 2020)). A plaintiff seeking to state a claim under either statute, involving a school, program, or activity receiving federal financial assistance, must show that he is (1) disabled under the statute, (2) otherwise qualified for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of[14] his disability. *Sumner Cty. Bd. of Educ.*, 2020 WL 5797980, at *2; *accord Maddox v. University of Tennessee*, 62 F.3d 843, 846 (6th Cir. 1995); *see H.M. v. Bd. of Educ. of the Kings Loc. Sch. Dist.*, 117 F. Supp. 3d 992, 1012 (S.D. Ohio 2015).

Only the third prong is in dispute for purposes of Defendants' respective motions. The Complaint adequately pleads, or the Court can reasonably infer, that Plaintiff's school receives federal funding; Plaintiff has ADHD and ODD, disabilities for which he receives the accommodation at school of going to the quiet room; and, with this quiet room

---

[14] To establish the causation under both statutes, plaintiffs must establish a but-for relationship between the protested act and the individual's disability. *M.J. by & through S.J.*, 1 F.4th at 453 (citation omitted) (internal quotation marks omitted). "[U]nder the ADA, plaintiffs must present sufficiently significant evidence of animus toward the disabled that is a but-for cause of the discriminatory behavior." *Id.* "And showing causation under [Section 504] is even harder. Plaintiffs must show that the school and its employees discriminated against them solely by reason of their disability." *Id.*

accommodation, he is otherwise qualified to attend school. (Doc. 1 ¶¶ 8-9, 23, 73, 75, 82).

### i. Defendant School Board

Defendant School Board argues that Plaintiff has not alleged sufficient facts to establish that it denied Plaintiff the benefits of school because of, or solely by reasons of, his disabilities. (Doc. 20 PageID 62); (Doc. 28 PageID 138-39). The Court can reasonably infer that the Complaint adequately pleads the third prong's denial of benefits requirement *i.e.*, that Plaintiff was denied educational benefits, because he alleges that he missed a number of days as a result of the events that took place at school on December 6, 2018. (Doc. 1 ¶¶ 46-48). However, the Complaint does not adequately plead, and the Court cannot reasonably infer, the third prong's causation element *i.e.*, that Plaintiff was discriminated against because of his disabilities. Even construing the allegations in the Complaint in Plaintiff's favor, as the Court must at this juncture, there are no factual allegations that the School Board, or its employee's, denied benefits to Plaintiff because of, or solely by reason of, his ADHD and ODD. And, to the extent that Plaintiff asserts that Defendants Stratton and Giffen directed him to go outside to "the crowded recess area with complete indifference to [Plaintiff]'s disability and [] current emotional state," such allegations are not in the Complaint and he cannot amend his Complaint in his Response in Opposition. (Doc. 27 PageID 127). Plaintiff fails to state a claim under Section 504 or the ADA against Defenant School Board.

### ii. Defendant Jackson, in his official capacity

Like Plaintiff's claims against Defendants Stratton and Giffen, the Court can reasonably infer that the Complaint adequately pleads the third prongs' denial of benefits

element against Defendant Jackson, as Plaintiff alleges that Plaintiff missed a number of days as a result of the events that took place at school on December 6, 2018. (Doc. 1 ¶¶ 46-48). Unlike Plaintiff's claims against Defendants Stratton and Giffen, though, the Court can reasonably infer the third prong's causation element with respect to the claims against Defendant Jackson. Construing the allegations in the Complaint in Plaintiff's favor, it contains sufficient allegations that allow the Court to draw the reasonable inference that Defendant Jackson, acting for the City of Monroe, is liable for the alleged misconduct under Section 504 and the ADA. Although the Complaint does not contain allegations about a specific well-treated comparator student, or comparators students, it alleges that students without disabilities were not subjected to handcuffing by Defendant Jackson for instructional or punitive purposes. (*Id.* ¶¶ 77, 77 PageID 15, 17).[15] Plaintiff states a claim under Section 504 and the ADA against Defenant Jackson in his official capacity. Dismissal of these two claims is not warranted.

### d. State tort claims

#### i. Negligent supervision and training

Plaintiff brings a claim for negligent supervision and training against Defendant School Board. (Doc. 1 ¶¶ 96-100); (Doc. 27 PageID 128-31). Defendant School Board contends that it is entitled to immunity under Ohio's Political Subdivision Tort Liability Act, codified in Ohio Revised Code Chapter 2744, and no exceptions to that Act apply here. (Doc. 20 PageID 63-64); (Doc. 28 PageID 140). Plaintiff does not respond to this immunity argument. (Doc. 27 PageID 128-31).

---

[15] The Complaint contains two paragraphs numbered 77. (Doc. ¶¶ 77, 77 PageID 15, 17).

"A plaintiff is not required to affirmatively demonstrate an exception to immunity at the pleading stage because that would require the plaintiff to overcome a motion for summary judgment in his complaint." *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 359 (6th Cir. 2014). "Instead, a plaintiff is only required to allege a set of facts which, if proven, would plausibly allow him to recover." *Id.* (citing *Mohat v. Horvath*, 2013-Ohio-4290, ¶ 29).

Ohio's Political Subdivision Tort Liability Act addresses when political subdivisions, their departments and agencies, and their employees are immune from liability for their actions. *Est. of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 809 (S.D. Ohio 2018) (citing *Lambert v. Clancy*, 2010-Ohio-1483, ¶ 8, 125 Ohio St. 3d 231, 233, 927 N.E.2d 585, 588). A three-tiered analysis is used to determine whether a political subdivision is immune from tort liability:

> First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

*Greene Cty. Agric. Soc. v. Liming,* 2000-Ohio-486, 89 Ohio St. 3d 551, 556–57, 733 N.E.2d 1141, 1146 (citations omitted).

Ohio Revised Code § 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Defendant School

Board is a political subdivision under the Act. Ohio Rev. Code § 2744.01(F). The provision of a system of public education is a governmental function. *Id.* § 2744.01(C)(2)(c). Accordingly, Defendant School Board is entitled to immunity under Ohio Revised Code § 2744.02(A)(1).

Ohio Revised Code § 2744.02(B) enumerates five exemptions from immunity for political subdivisions. Those exemptions are, in brief: negligent operation of any motor vehicle by employees; negligent performance of acts by employees with respect to proprietary functions of the political subdivision; failure to keep public roads in repair and to remove obstructions from public roads; negligence of employees that occurs within or on the grounds of, and is due to physical defects within or on the grounds, buildings used in connection with the performance of a governmental function; and when civil liability is expressly imposed upon the political subdivision by a section of the Ohio Revised Code. *Id.* § 2744.02(B)(1)-(5). None of the enumerated exceptions apply to the facts in this case. There are no allegations of a negligent operation of a motor vehicle, a negligently performed proprietary function, an injury due to an obstructed public road, a physical defect on school grounds, or a section of the Revised Code which expressly imposes liability on Defendant School Board. Thus, Ohio Revised Code § 2744(B) does not apply, and Defendant School Board is immune from liability. *See Shively*, 579 F. App'x at 359; *cf. Cline v. Tecumseh Loc. Bd. of Educ.*, 2021-Ohio-1329, ¶ 13; *Burchard v. Ashland Cty. Bd. of Developmental Disabilities*, 2018-Ohio-4408, ¶ 31. Dismissal of this claim is proper.

### ii. Remaining tort claims against Defendants Stratton,[16] Giffen, and Jackson in his individual capacity only[17]

Plaintiff brings claims of negligence and negligent infliction of emotional distress against Defendants Stratton, Giffen, and Jackson; claims of assault and battery against Defendant Jackson; and claims for intentional infliction of emotional distress against Defendants Giffen and Jackson. (Doc. 1 ¶¶ 88-91, 92-95, 101-04, 105-06); (Doc. 1-1 PageID 21); *see* (Doc. 29 PageID 157).

Defendants Stratton and Giffen argue that they are entitled to immunity under Ohio's Political Subdivision Tort Liability Act due to their positions as public school administrators for Defendant School Board. (Doc. 20 PageID 64-65); (Doc. 28 PageID 140-41). Plaintiff responds that dismissal is not warranted as the allegations in the Complaint lead to the reasonable inference that, on December 6, 2018, Defendants Stratton and Giffen acted wantonly in violation of Ohio Revised Code § 2744.03(A)(6). (Doc. 27 PageID 132). Defendant Jackson similarly argues that he is entitled to immunity under Ohio's Political Subdivision Tort Liability Act due to his position as school resource officer for Defendant School Board and police officer for the City of Monroe, and because no exception under the Act applies. (Doc. 24 PageID 116-19). Plaintiff responds that the allegations in the Complaint lead to the reasonable inference that, on December 6, 2018, Defendant Jackson acted maliciously, in bad faith, wantonly or recklessly toward Plaintiff, in violation of Ohio Revised Code § 2744.03(A)(6). (Doc. 27 PageID 158-59).

---

[16] In each of Plaintiffs negligence claims, he misspells Defendant Stratton's name as "Stafford." (Doc. 1 ¶¶ 98, 102); (Doc. 1-1 PageID 21).

[17] As the parties address these remaining tort claims together, the Court will too. Additionally, Plaintiff concedes that all of these claims should not proceed against Defendant Jackson in his official capacity. (Doc. 29 PageID 157). Plaintiff also concedes that his assault claim should not proceed against Defendant Giffen. (Doc. 27 PageID 128).

The three-tier analysis discussed above does not apply when examining immunity pursuant to Ohio Revised Code § 2744 in regard to individual employees of a political subdivision. *Cramer v. Auglaize Acres*, 2007-Ohio-1946, ¶ 17, 113 Ohio St. 3d 266, 270, 865 N.E.2d 9, 13. Instead, Ohio Revised Code § 2744.03(A)(6) provides that an employee of a political subdivision is immune from liability unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside of the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

*Id.* (citing Ohio Rev. Code § 2744.03(A)(6)).

As the terms are used in Chapter 2744, "malice" is the "willful and intentional design to injure or harm another, usually seriously, through conduct that is unlawful or unjustified;" "bad faith" includes a "dishonest purpose, conscious wrongdoing, or breach of a known duty through some ulterior motive;" "wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result;" and "reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Burghardt v. Ryan*, No. 5:19-CV-2788, 2021 WL 4245036, at *15 (N.D. Ohio Sept. 17, 2021) (first citing *Otero v. Wood*, 316 F. Supp. 2d 612, 629 (S.D. Ohio 2004); then citing *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 29, 134 Ohio St. 3d 380, 387, 983 N.E.2d 266, 273); *accord Anderson*, 2012-Ohio-5711, Syllabus 3, ¶ 33 (citing BLACK'S

LAW DICTIONARY 1613–14 (8th ed. 2004) (one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results)).

The Complaint does not contain factual allegations that, if proven, would plausibly allow Plaintiff to recover against Defendants Stratton and Giffen for negligence and negligent infliction of emotional distress. *See Shively*, 579 F. App'x at 359. There are no allegations that those two were aware that there was a risk of, or great probability of, harm to Plaintiff when they denied his request to go to the quiet room and ordered him to go to outside recess with the other students on December 6, 2018. And, the Complaint does not allege that either Defendant Stratton or Giffen involved Defendant Jackson. Dismissal of these two negligence claims against these two Defendants is proper.

The Complaint alleges that, on December 6, 2018, Defendant Jackson knew that Plaintiff was a minor student with diagnoses of ADHD and ODD; threw a drink down after following Plaintiff to outside recess; without warning, grabbed Plaintiff from behind in an aggressive manner; proceeded to scream at, manhandle, and handcuff Plaintiff; threated to send Plaintiff to "juvie" over the Christmas holiday; marched Plaintiff inside in front of Plaintiff's peers; marched Plaintiff through the school's hallways in front of some of the school's teachers and more of Plaintiff's peers; again threated to send Plaintiff to "juvie" over the Christmas holiday; more than once, physically lifted up Plaintiff's handcuffed hands behind Plaintiff's back causing pain; left Plaintiff handcuffed in a chair in the school office for up to 20 minutes; while Plaintiff was handcuffed in the office, told Plaintiff that he was a bad kid, told Plaintiff that he had always been a bad kid, and asked Plaintiff what Plaintiff thought he would do now; and mislead Plaintiff's mother while recapping her on Plaintiff's behavior and the need for handcuffs. (Doc. 1 ¶¶ 31-45, 101-104); (Doc. 1-1

PageID 21-22). The Court finds that these allegations are sufficient, at this juncture, to show that the Defendant Jackson is not entitled to state-law immunity. *See Shively*, 579 F. App'x at 359. The negligence and intentional tort claims against Defendant Jackson will proceed.

Finally, with respect to Plaintiff's intentional infliction of emotional distress claim against Defendant Giffen, the Complaint alleges that, at the school office, while Plaintiff remained handcuffed and sitting down, Defendant Giffen told Plaintiff that he was a bad kid, told Plaintiff that he had always been a bad kid, and asked Plaintiff what Plaintiff thought he would do now. (Doc. 1 ¶ 38 PageID 9). The Complaint alleges this taunting was extreme and outrageous, caused Plaintiff psychological and emotional injuries, and his resulting mental anguish was such that no reasonable person could be expected to endure it. (Doc. 1 ¶¶ 105-06); (Doc. 1-1 PageID 21). The Court finds that the allegations— that Defendant Giffen taunted Plaintiff, a handcuffed minor student with known diagnoses of ADHD and ODD, immediately after Defendant Jackson screamed at, manhandled, handcuffed, and paraded Plaintiff from outside recess, through the school's hallways, and to the school's office—are sufficient at this stage of the pleadings to show that the Defendant Giffen is not entitled to state-law immunity as to this claim. *See Shively*, 579 F. App'x at 359. Dismissal of this claim against Defendant Giffen is not warranted.

### III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that Defendants' respective Motion to Dismiss (Doc. 20) and Motion for Judgment on the Pleadings (Doc. 24) are each **GRANTED in part and DENIED in part**. No claims remain against Defendants School Board, Stratton, or City of Monroe, Ohio Police Department. The only claim that remains

against Defendant Giffen is Plaintiff's claim for intentional inflectional emotional distress. Plaintiff's Fourth Amendment and Equal Protection Clause claims remain against Defendant Jackson in his individual capacity. Plaintiff's claims under Section 504 and the ADA remain against Defendant Jackson in his official capacity. Plaintiff's claims for negligence, negligent infliction of emotional distress, assault, battery, and intentional infliction of emotional distress also remain against Defendant Jackson. The Court will schedule a telephone conference to discuss the calendar in this matter shortly.

**IT IS SO ORDERED.**

_/s Michael R. Barrett_____
Michael R. Barrett, Judge
United States District Court